IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES                                                                    PLAINTIFF/RESPONDENT

v.                                   No. 5:16-CR-50016

LANCE BRADLEY WILLIAMS                                                           DEFENDANT/MOVANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

On April 8, 2021, the Defendant/Movant Lance Bradley Williams (hereinafter "Defendant") filed a 28 U.S.C. § 2255 Motion to Vacate, Set Aside or Correct Sentence. (ECF No. 68). The United States filed its Response on May 6, 2021. (ECF No. 70). Defendant replied on June 7, 2021, (ECF No. 71), and the § 2255 Motion is now ripe for consideration. For reasons stated below, the Court finds an evidentiary hearing unnecessary and issues the following Report and Recommendation. *See Engelen v United States,* 68 F.3d 238, 240 (8th Cir. 1995).

**I. Background**

On February 9, 2016, Defendant was charged in a criminal complaint with one count of conspiring to commit sex trafficking of a child in violation of 18 U.S.C. §§ 1594(c), 1591(a) and (c) and once count of sex trafficking of a child in violation of 18 U.S.C. §§ 1591 (a) and (c). (ECF No. 1). On March 16, 2016, the grand jury returned an Indictment against Defendant on these two charges, (ECF No. 11), and Defendant pled not guilty to both counts on March 18, 2016. After two continuances of the trial date, the filing of evidentiary motions and a lengthy pre-trial hearing on

August 17, 2016, Defendant appeared with his appointed counsel, Tim Snively, before the Honorable Timothy L. Brooks, U.S. District Court Judge, and entered a plea of guilty to Count 1 (violation of 18 U.S.C. § 1594(c). (ECF No. 32). At that time, the Court tentatively approved Defendant's written plea agreement. (ECF No. 33).

After Defendant's change of plea but prior to sentencing, Defendant wrote the Court, requesting that Mr. Snively be replaced with new counsel, alleging he was forced into pleading guilty because, *inter alia*, Mr. Snively advised him to "lie" and advised he would be "hated," could "not win" with "an all white jury" and would be given the "max on each charge." (ECF No. 34)[1]. A hearing was conducted by U.S. Magistrate Judge Erin Setser who permitted Mr. Snively to withdraw and appointed Andrew Miller to represent Defendant for the remainder of the proceedings. (ECF No. 36). The undersigned notes that during the hearing, the Magistrate Judge addressed Defendant's allegation he had been forced into pleading guilty by counsel (who denied the contention) and after providing Defendant an opportunity to consider his strategy, Defendant unequivocally advised the Court he did not intend to withdraw his guilty plea. (ECF No. 74). On December 20, 2016, Defendant appeared for sentencing before U.S. District Judge Brooks at which time the Court accepted Defendant's plea agreement and sentenced Defendant to 120 months' imprisonment. (ECF Nos. 46 - Sentencing Hearing and 48 - Judgment).

On January 3, 2017, and pursuant to *Anders v. California*, 386 U.S. 738 (1967), Defendant appealed his conviction and sentence to the Court of Appeals for the Eighth Circuit, challenging the Court's application of U.S.S.G. §§ 2G1.3(b)(3) and 4B1.5(b)(1) and imposition of sentencing

---

[1] Both Defendant's August 21, 2016, letter seeking new counsel and Mr. Snively's prior Motion to Withdraw as Counsel (denied April 4, 2016) are docketed as ECF No. 34.

enhancements. (ECF No. 50).[2] On October 13, 2017, the Circuit Court affirmed the District Court's sentencing of Defendant, finding "no error in the application of either enhancement" and noting as its basis a review of

> the evidence introduced at the sentencing hearing, which included testimony that Williams used a cellular telephone to place website advertisements soliciting persons to engage in sexual conduct with the minor and testimony that Williams facilitated several acts of prostitution involving the minor over the course of the conspiracy.

(ECF No. 65). Defendant's direct appeal did not include any claims regarding the involuntariness of his guilty plea and/or coercion to waive his jury trial right. Defendant did not petition for an *en banc* review and did not file a petition for writ of certiorari.

On March 12, 2021, Defendant initiated his 28 U.S.C. § 2255 Motion. (ECF No. 66). At the direction of the Magistrate Judge, and on April 8, 2021, Defendant filed the instant *pro se* Motion to Vacate under 28 U.S.C. § 2255 (ECF No. 68), asserting two grounds for relief. First, Defendant says his 2016 "jury trial [right] was not intelligently and knowingly waived with a full awareness of the nature of the right." With respect to this claim, Defendant contends he was never advised that, at a trial, he could "assist in the selection of jurors and/or strike potential jurors that were biased or otherwise unqualified;" Defendant further contends he was never advised the jury must be unanimous in its verdict to convict him and was never told his jury would be composed of twelve jurors. Second, and flowing directly from this first ground, Defendant contends his counsel provided ineffective assistance as "counsel never fully advised me of the nature of my jury trial right before advising me to waive this right." Defendant says he learned about his jury trial rights on his

---

[2] Defendant's appeal alleged the District Court abused its discretion when applying the 2-level enhancement for use of a computer (U.S.S.G. § 2G1.3(b)(3)) and in applying the 5-level enhancement and finding Defendant has engaged in a pattern of activity involving sexual conduct (U.S.S.G. § 4B1.5(b)(1)).

"own . . . using the law library." (ECF No. 68). Defendant requests to be allowed to withdraw his guilty plea and proceed to a jury trial on the Indictment.

The United States challenges Defendant's § 2255 Motion as untimely, noting the limitations period for filing such motion expired on January 11, 2019, more than two years prior to Defendant's filing. The Government contends a basis for equitable tolling has not been established by Defendant, who bears the burden of demonstrating extraordinary and external circumstances which prevented him from timely seeking relief. It then posits that counsel's performance was not constitutionally deficient under the test employed by *Strickland v. Washington,* 466 U.S. 668, 687 (1984), denying that *United States v. Williams*, 951 F.3d 892 (8th Cir. 2020) establishes a new constitutionally required minimum with respect to understanding one's right to a jury trial. The Government contends the record illustrates Defendant's jury trial waiver was constitutionally sound – knowing, voluntary and intelligent – and contends, to the detriment of his argument, that Defendant has not established any prejudice.

Defendant replied on June 7, 2021 (ECF No. 71), seeking application of equitable tolling and alleging that, in October 2018, a natural disaster struck his prison, resulting in Defendant's relocation until October 2020 without his legal papers. Defendant contends he was later infected with COVID-19 from which he "suffered significantly." Defendant argues that, in addition to being unaware of how the jury would be selected, he was unaware he could "call witnesses for his defense and challenge the government's witnesses or can remain silent." Defendant first lays the blame at Mr. Snively's feet, suggesting counsel never "apprised him of the 'nature' of the right he was waiving" and "coerced" him into pleading guilty by advising the jury would be "all white." (ECF No. 71). Defendant then suggests that Mr. Miller too was ineffective for "allowing [his] client to

enter into plea agreements (sic)" when Defendant was unaware of the rights he was waiving. Defendant alleges he "pleaded with the court to change his plea to not guilty but to no avail." In conclusion, Defendant says that he was not made fully aware of the nature of his right to a jury trial, and had he been properly aware, "[t]he entire outcome of the proceeding would have been different . . . ." (ECF No. 71).

## II.   Discussion

### A.   *Hearing*

As noted above, the Court finds a hearing on Defendant's motion is unwarranted. *Engelen v. United States,* 68 F.3d 238, 240 (8th Cir. 1995). "A section 2255 petition can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible or conclusions rather than statements of fact." *Delgado v. United States*, 162 F.3d 981, 983 (8th Cir.1998). For reasons set forth below, the Court finds Defendant's § 2255 Motion both untimely and contradicted by the record, entitling Defendant to no relief, and thus, there exists no need for an evidentiary hearing. *Rogers v. United States*, 1 F.3d. 697, 699 (8th Cir. 1993).

### B.   *Timeliness*

Section 2255 allows a federal prisoner a limited opportunity to seek post-conviction relief on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Motions pursuant to § 2255 are timely if brought within the one-year statute of limitations period which runs from the latest of:  (1) the date on which the judgment of conviction

becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f)(1)-(4)). Motions not filed within these time limits should be dismissed as untimely, *Moore v. United States*, 173 F.3d 1131, 1133-35 (8th Cir. 1999); however, the Court should consider whether equitable tolling is applicable. *United States v. Martin*, 408 F.3d 1089, 1092 (8th Cir. 2005). "Equitable tolling is proper only when extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." *Kreutzer v. Bowersox*, 213 F.3d 460 (8th Cir. 2000). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Walker v. Norris,* 436 F.3d 1026, 1032 (8th Cir. 2006) (cleaned up). The diligence prong concerns "those affairs within the [petitioner's] control," while the extraordinary circumstances prong "is meant to cover matters outside [the petitioner's] control." *Menominee Indian Tribe of Wisconsin v U.S.*, 136 S.Ct. 750, 756 (2016).

Defendant's conviction became final on January 11, 2018, commencing the one-year time period in which to file a § 2255 motion. *Martin*, 408 F.3d at 1090. The Government contends Defendant's filing is untimely and equitable tolling inapplicable. Defendant avers in his Motion that he was unaware of his constitutionally protected rights until later learning of them in the law library (presumably after expiration of the deadline) and in his Reply, Defendant contends his relocation

within the Bureau of Prisons – due to a natural disaster – and his subsequent contraction of COVID-19 justifiably delayed the filing of his Motion. The Court finds that Defendant's filing – made in March 2021 and more than two (2) years beyond Defendant's 2019 filling deadline – is untimely. The Court now considers whether Defendant is entitled to application of the doctrine of equitable tolling to excuse the tardiness.

Assuming as correct Defendant's reported time-line, Defendant enjoyed 8-9 months prior to his October 2018 BOP relocation and concurrent "misplacement" of his papers during which to file his § 2255 Motion. Contrary to Defendant's assertions, there is no evidence in the Clerk's file that Defendant contacted the Court after October 2018 (or at any time) to obtain "new legal papers" and, despite having made *pro se* motions in the past, Defendant did not, once relocated, file his § 2255 Motion or file a request for equitable tolling.[3] Defendant does not suggest he was prohibited from contacting the Court from his new facility. And even a lack of resources at his reassigned facility would be legally insufficient to establish extraordinary circumstances. *Kreutzer v. Bowersox, supra.* With respect to Defendant's contention that he did not file until he became self-taught about his jury trial rights, the Court is unpersuaded. Defendant's alleged ignorance of his right to a jury trial – even had the Court found it credible – does not supply a basis for the application of equitable tolling. *See Shoemate v. Norris,* 390 F.3d 595, 598 (8th Cir. 2004) (ignorance of the law and lack of legal experience is not an "extraordinary circumstance" that would justify equitable tolling for an untimely filing, even for a *pro se* prisoner). Not only does Defendant fail to establish extraordinary circumstances beyond his control but Defendant's failure to file his

---

[3] *See United States v. Spencer,* 2017 WL 11592881, n.1 (D. Minnesota October 10, 2017) (discussing whether a court has jurisdiction to grant extensions of time to file a § 2255 Motion).

§ 2255 Motion for more than two (2) years beyond expiration of the deadline without taking any action whatsoever is wholly inconsistent with the exercise of due diligence. *Walker, supra;* 28 U.S.C. § 2244(d). Finally, with respect to Defendant's unfortunate COVID-19 diagnosis, the Court takes judicial notice that the COVID-19 pandemic cannot serve as a basis for equitably tolling Defendant's January 11, 2019 deadline.[4] Thus, application of the doctrine of equitable tolling is unavailable to Defendant, and his untimely § 2255 Motion must be dismissed.

## C. *Ineffective Assistance of Counsel*

Even if Defendant's claims were not time-barred, the Court would still deny his Motion.

The Constitution affords a right to effective assistance of counsel in criminal cases. *Martinez v. Ryan,* 566 U.S. 1, 12 (2012); *Strickland v. Washington*, 466 U.S. 668, 684 (1984). In order to prevail on such a claim, Defendant must illustrate, by a preponderance of the evidence, that counsel's assistance fell below an objective standard of reasonableness and that the deficient performance prejudiced the Defendant. *See Becht v. U.S.* 403 F.3d 541, 545 (8th Cir. 2005), *cert. denied*, 546 U.S. 1177 (2006); *Strickland v. Washington,* 466 U.S. 668 (1984). Defendant alleges ineffective assistance with respect to his guilty plea. A guilty plea constitutes a waiver of numerous constitutional rights: the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination. *McCarthy v. United States*, 394 U.S. 459, 466 (1969). Because of the numerous constitutional protections implicated and waived by a guilty plea, the Supreme Court requires that the defendant's plea must be knowing, voluntary and intelligent in order to be valid. *Brady v. United States*, 397 U.S. 742, 748 (1970) (The voluntariness of a plea determined from

---

[4]The World Health Organization did not declare the novel coronavirus (COVID-19) outbreak a global pandemic until March 11, 2020. https://pubmed.ncbi.nlm.nih.gov/32191675/

relevant circumstances surrounding it.) "Collateral review of a guilty plea is therefore 'ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989). Defendant must establish that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985). Evaluation of counsel's performance is made "in light of the facts and circumstances at the time of the trial," *Carter v. Hopkins,* 92 F.3d 666, 669 (8th Cir. 1996), without engaging in hindsight. *Kenley v. Armontrout*, 937 F.2d 1298, 1303 (8th Cir. 1991).

As described above, Defendant says he did not fully understand the nature of his jury trial right because his counsel "failed to explain the nature of his jury trial right," and thus, his plea of guilty was involuntary and should now be set aside in favor of trial. Having reviewed transcripts of hearings conducted by Judge Brooks and Magistrate Judge Setser, along with the Statement of Mr. Snively, the Court is not compelled by Defendant's involuntary guilty plea theory of relief.

On the morning of August 17, 2016, Judge Brooks conducted a pre-trial hearing. During this proceeding the Court and counsel – in the presence of Defendant – discussed the parties' pending evidentiary motions and anticipated trial exhibits, and the Court ruled on certain evidentiary motions in anticipation of the upcoming trial. (ECF No. 73). The Court addressed the process of jury selection, or *voir dire*, explaining how many jurors would be selected for the trial, the process by which jurors could be stricken for cause, and the number of peremptory strikes the Government (6) and the Defendant (10) could exercise during juror selection. (ECF No. 73). Mr. Snively's Statement identifies similar discussions with Defendant regarding "the different phases of trial, specifically including, the jury selection process," wherein he advised Defendant "that his jury would be composed of twelve individuals and that a unanimous verdict would be required for him

to be found guilty." (ECF No. 72).

On the afternoon of August 17, Judge Brooks was requested to conduct a change of plea hearing for Defendant. (ECF No. 32). As illustrated by its hearing colloquy, the Court inquired of Defendant's decision to change his plea from not guilty to guilty, intentionally probing to ascertain whether Defendant had sufficient time to discuss with Mr. Snively the negotiated plea and his constitutionally protected rights, and whether he was certain of his decision to change his plea to guilty. The Court addressed Defendant's right to a jury trial in his early remarks:

> COURT: I need to make sure that you understand that you'll be giving up not only your right to go to trial on Monday but all of your rights and protections that go along with the right to a jury trial; and finally I must satisfy myself that any plea that you give is both voluntary and knowing.

(ECF No. 63). The Court then inquired about the time Defendant spent speaking with counsel and whether that time was adequate and sufficient, and whether Defendant and Mr. Snively had discussed "all the pros and cons" associated with a potential guilty plea. Defendant answered successively that he had plenty of time to discuss the matter with Mr. Snively, was "fully satisfied" with Mr. Snively's legal services and representation, and was certain he wanted to change his plea. (ECF No. 63). The Court advised Defendant he "obviously [has] a right to plead guilty to Count One" but admonished that "if you would rather go to trial or if you're uncertain in any manner about whether you should or should not go to trial, then we can just stop this hearing and proceed to trial on Monday. . . ." (ECF No.63). The Court made clear Defendant could proceed with the jury trial as scheduled. Acknowledging that he understood this right, Defendant indicated he wanted instead to plead guilty. Portions of the Court's inquiries follow:

COURT: That's important that you understand that because if you plead guilty, not only will you be foregoing your right to a jury trial on Monday, but you'll be foregoing a whole host of constitutional rights and protections that go along with your right to a jury trial. For example, and as you know, at a trial would have the right to have a jury determine the facts. At a trial, Mr. Snively obviously would be able to represent you at that trial. At a trial you and Mr. Snively would be able to see, hear, and cross-examine all the witnesses that the government might call to testify against you; and you and Mr. Snively would have the right to use the Court's subpoena power to compel the attendance of any witnesses that you might like to call and testify on your behalf. At a trial you have a Fifth Amendment right not to say anything, and the Government could not call to the witness stand and force you to testify against your will. Now, you also have the right to waive your Fifth Amendment rights, and if you wanted to, you could take the stand, just as Mr. Snively indicated to the Court was likely, you could take the stand and testify in your own defense. The point I am making here is it would be up to you, and the Government could not force you to testify. The choice would be yours. Do you understand all of these rights and protections that go along with a trial that I've described so far?

DEFENDANT: Yes, sir.

COURT: Another important thing about a trial. At a trial, the burden of proof would be on the Government and that burden is to prove and to persuade the members of the jury that it had met each and every element of the crimes, of proving the crimes with which you have been charged. They would have to do that and persuade them by a standard known as "beyond a reasonable doubt." The jury would actually be instructed at the beginning of the trial that you have no burden to prove anything, and most certainly you don't have the burden to prove that you're innocent. Rather, the burden is at all times on the Government to prove its case. Do you understand that?

DEFENDANT: Yes, sir.

\*\*\*\*

**COURT:** Do you understand that by entering a guilty plea today that you are waiving all of those rights and protections that go along with your right to a jury trial?

**DEFENDANT:** Yes, sir.

**COURT:** And you've had an adequate opportunity to discuss those matters [the elements of the crime of conspiracy to commit sex trafficking of a minor] with Mr. Snively?

**DEFENDANT:** Yes, sir.

\* \* \* \*

**COURT:** Mr. Williams, has anyone forced you in any way to plead guilty?

**DEFENDANT:** No, sir.

**COURT:** Mr. Williams, has anyone threatened you or a family member or a loved one that some harm is going to come to you or to them if you don't plead guilty.

**DEFENDANT:** No, sir.

**COURT:** Mr. Williams is your desire and objective in pleading guilty today something that is of your own free will and volition and something that you desire to do because you're guilty and for no other reason.

**DEFENDANT:** Yes, sir.

\* \* \* \*

**COURT:** Did you read this plea agreement before you signed it?

**DEFENDANT:** Yes, sir.

**COURT:** Did you have a full and fair opportunity to confer with Mr. Snively about the contents of this plea agreement before you signed it?

**DEFENDANT:** Yes, sir.

| | |
|---|---|
| COURT: | Did Mr. Snively answer any and all questions that you may have had about the plea agreement? |
| DEFENDANT: | Yes, sir. |

(ECF No. 63, pp. 9-13, 16-18). The Court confirmed with Mr. Snively that he had explained both the indictment and the negotiated plea agreement[5] to Defendant, explained the consequences of pleading guilty to Count 1, and answered all of Defendant's questions. (ECF No. 63). Acknowledging that Defendant had been present earlier the same day for the Court's pre-trial hearing, the Court reminded Defendant that, once entered, his guilty plea could not easily be undone:

| | |
|---|---|
| COURT: | ... You might wake up tomorrow morning and say, "What did I do yesterday? I shouldn't have done that. Why did I do that? And you might call Mr. Snively up and say, "I felt pressured. I didn't have enough time to think about this. I'd like to undo and withdraw my guilty plea." And I need you to understand that absent some fair and just reason, you can't just ask to withdraw your guilty plea. It doesn't work that way. |
| DEFENDANT: | Right. |
| COURT: | Do you understand that? |
| DEFENDANT: | Yes, sir. |
| COURT: | So absent some fair and just cause, if I accept your guilty plea today, you can't come back later, whether it's tomorrow or next week of next month, and ask to withdraw your guilty plea. Do you understand that? |
| DEFENDANT: | Yes, sir. |

(ECF No. 63, pp. 19-20).

---

[5] This Court observes Defendant's signed Plea Agreement (ECF No. 33) advises Defendant of his right to a "speedy and public trial by jury" in Paragraph 3 and advises in Paragraph 4 of Defendant's waiver of that jury trial right by entering a plea of guilty.

Based on the record of circumstances surrounding his plea, the Court finds incredible Defendant's contention he "was unaware," prior to pleading guilty, of his jury trial rights. The record of Defendant's plea hearing is replete with admonitions and inquiries by Judge Brooks with respect to Defendant's understanding of his constitutional rights (including, but not limited to, his jury trial rights) and the voluntary surrender of those rights by entry of a guilty plea. The Court diligently inquired about Defendant's communications with counsel regarding these rights as well as counsel's review of the government's case against him; Defendant's review of the plea agreement with counsel and his knowledge and understanding of same; and the voluntariness of his plea of guilty. (ECF No. 63). Defendant persuaded the Court that he understood he was waiving his right to trial by jury by pleading guilty, stating he freely and voluntarily chose to plead guilty following consultation with counsel. *See United States v. McNeely,* 20 F.3d 886, 888 (8th Cir. 1994) (per curiam) (defendant's plea is valid where the record demonstrates he "understood the charges against him, was not dissatisfied with the services rendered by his attorney, and entered his plea knowingly and voluntarily.") In this respect, the Court agrees with the Government that *United States v. Williams,* 951 F.3d 892 (8th Cir. 2020), did not alter the legal landscape or require any additional admonishment to a Defendant who wishes to waives his right to a jury trial by pleading guilty.

Defendant says Mr. Snively "coerced" him into pleading guilty and advised him to "lie" (ECF No. 71), but Defendant's own statements to the Court, made under oath during the change of plea hearing, are antithetical. Contrary to his § 2255 arguments, Defendant's affirmations during the plea hearing, taken individually and collectively, are supportive of Defendant's knowing and voluntary plea of guilty to Court 1 of the Indictment. "Solemn declarations in open court carry a strong presumption of verity." *United States v. Fitzhugh*, 78 F.3d 1326, 1329 (8th Cir. 1996)

14

(quoting *Blackledge v. Allison*, 431 U.S. 63, 75 (1977)). A defendant who expressly represents in open court that his guilty plea is voluntary may not ordinarily (or credibly) repudiate his statements thereafter. *Fontaine v. United States*, 411 U.S. 213, 215 (1973).

While the Court's colloquy during the plea hearing thoroughly addressed Defendant's constitutionally protected rights and waiver of the same, the record is more robust concerning Defendant's specific right to a jury trial. During the pre-trial hearing and in Defendant's presence, Mr. Snively acknowledged receiving the venire list and thereafter jury selection was discussed by the Court and counsel, including the number of peremptory strikes Defendant would enjoy as well as the process for disqualifying venire members for cause. (ECF No.73, pp. 48-54). The Court advised of its plan to seat a twelve-person jury with selection of an additional alternate juror and generally discussed the venire. (ECF No.73, pp. 48-54). Mr. Snively's Statement reflects that jury selection was a topic discussed with Defendant as the jury trial approached, with Mr. Snively "believ[ing] that [Defendant] was fully informed of the nature and process of jury selection." (ECF No. 72). The hearing transcript contradicts Defendant's contention that he was never advised about the process for selection of the jury or its composition. The Court finds Defendant's argument that the Court never "cured" counsel's deficient representations about the jury both misguided and meritless.[6] The entirety of the Court's record, along with Mr. Snively's Statement, support that

---

[6] Defendant says in his Reply that "[k]nowing how the jury is selected . . . plays in to the overall decision whether to waive this right or to take advantage of the right. . . Surely a defendant must know how the very jury members are going to be selected also." Defendant complains that "the Court never cured [Defendant's] concern about the jury make-up or of the attendant rights." (ECF No. 71). While a court generally has no obligation to "cure" an alleged misrepresentation by a lawyer to his client, the Court believes Judge Brooks' statements and instructions regarding jury selection and the many admonitions concerning Defendant's right to trial by jury, when taken as a whole, eviscerate Defendant's § 2255 argument that he knew neither about his jury trial rights nor the process of jury selection.

Defendant was informed concerning his constitutionally protected right to a trial by jury.

Defendant replies that he "pleaded with the Court to change his plea to not guilty but to no avail." (ECF No. 71). This is not only self-serving but revisionist history on the part of Defendant. The Court's review included the transcript of a post-plea hearing on September 8, 2016, conducted by Magistrate Judge Setser wherein Mr. Snively was permitted – at the Defendant's request – to withdraw as counsel and replacement counsel was appointed to represent Defendant through sentencing and appeal. (ECF. No. 74). While the possible withdrawal of Defendant's guilty plea was addressed (and discouraged) by the Magistrate Judge, Defendant, after considering his strategy during a recess, advised the Court he did not seek to withdraw his guilty plea (ECF No. 74, p. 18) stating that "I would like a new lawyer. Not to take back my plea. My plea is my plea and I stand on that." (ECF No. 74, p. 19). The Magistrate Judge specifically inquired – "[Y]ou're representing to the Court at this time that you do not intend to seek to withdraw your guilty, is that correct?" to which Defendant answered "Yes, ma'am." (ECF No. 74, p.19) When advising Defendant that the Court would grant his motion for new counsel and appoint a new lawyer for sentencing, the Court sought a final clarification from Defendant – "You're going to stick with the plea, and it's preparing for sentencing, is that correct?" to which Defendant again responded "Yes, ma'am." (ECF No. 74, p. 21). Defendant's § 2255 argument that he pleaded with the Court to change his plea from guilty back to not guilty on Count 1 "to no avail" may persist in the mind of Defendant but finds no basis in the record.

In his original filing, Defendant alleges Mr. Snively advised him to waive his jury trial rights because the "jury would be all white and upper class." (ECF No. 68-1). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-*

16

*Ortega,* 528 U.S. 470, 481 (2000). The Court does not view counsel's predictions about the venire composition – assumed to be true for purpose of Defendant's § 2255 Motion – as rising to the level of incompetence. *See Strickland,* 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential,"); *Harrington v. Richter*, 562 U.S. 86, 104 (2011) ("The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom.") That Defendant and his counsel discussed the jury in the days leading up to Defendant's scheduled trial is established by Mr. Snively's Statement, and the Court does not doubt advice about the jury may have played a role in Defendant's decision to plead guilty. The Court also finds undisputed that Mr. Snively persuaded the Government to offer Defendant a last minute plea offer it had been unwilling to extend prior to the pre-trial hearing on August 16 (ECF No. 73, pp. 84-85); the new plea offer to Count 1 contained a pared-down factual basis and required no mandatory minimum sentence. (ECF No. 74, pp. 5-8). Defendant may now disagree with Mr. Snively's prediction about a jury trial and/or recommendation about a guilty plea but disagreements in hindsight do not render counsel's advice legally inadequate under *Strickland.*

Having gleaned the record herein, the Court finds nothing suggestive that counsel's performance with respect to Defendant's change of plea was deficient or ineffective and thus, the Court need not consider prejudice. *See United States v. Walker,* 324 F.3d 1032, 1040 (8th Cir. 2003) (if a movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim). Even so, Defendant cannot establish prejudice. Defendant persisted in his plea of guilty with his new counsel, Mr. Miller, and has not illustrated that, but for Mr. Snively's alleged failure to advise him about his jury trial rights, he would have

insisted on proceeding to trial. *Hill v. Lockhart,* 474 U.S. at 56-59. The Court views as particularly implausible Defendant's argument that, had he simply known he could participate in the jury selection process, he would have proceeded to trial rather than pleading guilty. The credibility of this unconvincing argument is additionally undermined by Judge Brooks' discussion of jury selection during the pre-trial hearing, mere hours prior to Defendant's decision to plead guilty. And while Defendant's reply now lumps Mr. Miller into his grievances, there is no evidence that, following appointment of Mr. Miller as counsel, any issue concerning the alleged involuntariness of Defendant's plea was communicated to counsel or raised before this Court or on appeal to the Eighth Circuit. To the contrary, during Defendant's sentencing hearing before Judge Brooks, Defendant evidenced his unequivocal satisfaction with Mr. Miller's counsel. (ECF No. 58, pp. 9-10).

For these reasons, with respect to Defendant's § 2255 argument that his 2017 "guilty plea is invalid as it was entered unknowingly and unintelligently," the Court finds Defendant's Motion is untimely and the claims raised therein without merit.

### III. Conclusion

Based upon the forgoing, the Court recommends that Defendant's § 2255 Motion to Vacate, Set Aside or Correct Sentence (ECF No. 68) be **DENIED** and **DISMISSED WITH PREJUDICE**. The Court further recommends that a certificate of appealability not issue because Defendant has failed to "make a substantial showing of the denial of a constitutional right." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000); 28 U.S.C. § 2253(c)(2).

**The parties have fourteen days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. Section 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

Dated this 19th day of July 2021.

　　　　　　　　　　　　　　　　　　　　*/s/ Christy Comstock*
　　　　　　　　　　　　　　　　　　　　HON. CHRISTY COMSTOCK
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE